**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-11-50041-001-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Christopher R. Georgeson, | |
| Defendant. | |

On October 29, 2019, the Court called for supplemental briefing regarding who is entitled to the restitution paid by Defendant Christopher R. Georgeson. (Doc. 6). SRP 2013-4 LLC ("SRP") and the United States filed that briefing but they continue to disagree on almost every legal issue. (Doc. 6). Because the limited factual record does not allow for a decision, the Court will not disburse the restitution payments until SRP and the United States present additional information or represent that no further information is available.

**BACKGROUND**

The parties have now presented a more developed version of the relevant facts but there are still crucial pieces missing. Thus, the following is based on the limited information the parties have offered as well as matters of public record.

On November 21, 2006, Georgeson and American Home Mortgage executed a promissory note in connection with Georgeson purchasing real property. On an unidentified date prior to 2010, American Home Mortgage assigned the promissory note to GMAC Mortgage, LLC. That assignment stated, in full,

PAY TO THE ORDER OF
GMAC Mortgage, LLC
Without Recourse
By: American Home Mortgage

(Doc. 3 at 11). Based on that assignment, as of 2010 GMAC was the owner of the note and entitled to all payments made by Georgeson.

In 2010, Georgeson pleaded guilty to wire fraud in connection with the origination of the promissory note. As a result of that plea, and pursuant to 18 U.S.C. § 3663A which made restitution mandatory, Georgeson was ordered to pay $103,356.64 in restitution. The criminal judgment identified the payee of that restitution as:

GMAC Mortgage
Attn: Legal Department
Loan #s: 359426771
and 359426769

(Doc. 3 at 7). The loan identified as Loan #359426771 was the promissory note referenced above. At the time of sentencing, that loan represented a loss amount of $48,749.42. The loan identified as Loan #359426769 was for an entirely separate loan. The parties have not provided any information regarding the origination of that other loan but the record from Georgeson's criminal prosecution indicates, at the time of sentencing, the loan represented a loss amount of $54,607.22. (Doc. 4 at 1).

Georgeson made his first restitution payments in April 2011. Those payments did not differentiate between the two loans. The Clerk of Court forwarded those payments to GMAC, also without differentiating between the two loans. GMAC accepted the early payments. Georgeson then made additional periodic payments which were forwarded to, and accepted by, GMAC.

In or around September 2012, GMAC executed an allonge to the promissory note regarding Loan #359426771.[1] The allonge stated, in relevant part,

---

[1] According to SRP, the servicing history after the transfer from GMAC begins on September 5, 2012. (Doc. 5 at 3). Therefore, it appears likely the allonge was executed around that time.

PAY TO THE ORDER OF:
SUMMIT REAL ESTATE PARTNERS L.P.
WITHOUT RECOURSE
GMAC MORTGAGE, LLC.

(Doc. 3 at 12). This allonge was the result of a "loan sale transaction between GMAC Mortgage and Summit Real Estate Partners." (Doc. 10 at 9). The parties have not provided any details regarding that transaction. Despite the lack of details, SRP argues there is "some evidence" the transaction involved both GMAC loans identified in the restitution judgment, meaning Summit would have become the owner of both loans. SRP cannot, however, "confirm" Summit became the owner of both loans. (Doc. 10 at 10). More importantly, however, there is no indication that the transaction made any reference to the restitution payments.

After the allonge, the Clerk of Court continued to send restitution payments to GMAC. Because of government retention practices, the earliest available canceled check is dated November 13, 2012.[2] That check was made out to GMAC but shows GMAC endorsed the check to Specialized Loan Servicing ("SLS"), the entity handling loan servicing for Summit. GMAC received checks from the Clerk of Court dated December 20, 2012, January 25, 2013 and March 4, 2013. GMAC endorsed all those checks to SLS. Something changed after March 4, however, because checks dated March 25, 2013, April 19, 2013, and May 21, 2013, were accepted by GMAC and were not endorsed to SLS. The Clerk of Court sent GMAC additional payments after May 2013 but those payments were returned as undeliverable. Eventually, the Clerk stopped attempting to deliver payments to GMAC. Georgeson, however, continued to make restitution payments, leading to the amount on deposit with the Clerk growing into a substantial sum.

In July 2013, SRP purchased the promissory note connected with Loan #359426771 from Summit Real Estate Partners for $1,829. To complete that transaction, Summit

---

[2] SRP filed a "Motion for Order Releasing Financial Records and Information re: Restitution." (Doc. 9). That motion seeks "all financial records, accountings, and copies of checks, with endorsements relating to the restitution funds paid into Court by Defendant Christopher R. Georgeson." (Doc. 9 at 1). SRP does not cite any legal basis for this motion and it will be denied.

executed an allonge which stated, in relevant part,
> For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.
> Pay to the order of: SRP 2013-4, LLC, Without Recourse
> SUMMIT REAL ESTATE PARTNERS, LP

(Doc. 3 at 13). SRP has not provided any additional information regarding its purchase agreement with Summit Real Estate Partners, meaning there is no evidence the purchase agreement referenced a transfer of the restitution payments. It is undisputed that SRP did not purchase the other loan identified in the restitution judgment. SRP identifies "Capital Mortgage Services, LLC," as the likely owner of that other loan but SRP cannot confirm that fact. (Doc. 10 at 10).

Despite purchasing the promissory note connected with Loan #359426771 in July 2013, SRP did not seek to recover restitution until 2019. On August 19, 2019, SRP filed a motion requesting the Court direct the restitution paid by Georgeson to SRP. (Doc. 3). The United States opposed that motion and the Court called for supplemental briefing. Among other matters, the Court directed the parties to address whether a victim is entitled to assign its entitlement to restitution to a third party. The Court also directed the parties to address whether "the restitution obligation [was] necessarily tied to ownership of the underlying promissory note such that transfer of the note automatically transferred entitlement to restitution." (Doc. 6 at 5). The parties submitted a supplemental brief reflecting they disagree on most issues.

## ANALYSIS

### I. Victims Can Assign Restitution

The threshold issue is whether a victim is permitted to assign its interest in a restitution judgment to a third party. The United States argues there is no clear authority allowing assignment by a victim awarded restitution pursuant to 18 U.S.C. § 3663A.[3]

---

[3] The permissibility of an assignment would be more straightforward if the restitution had been ordered pursuant to 18 U.S.C. § 3663. That statute contemplates a defendant may request the court order "restitution to a person or organization designated by the victim." 18 U.S.C. § 3663(b)(5). The Ninth Circuit has interpreted § 3663 as requiring a court recognize an assignment by a victim. *United States v. Turner*, 312 F.3d 1137, 1144 (9th Cir. 2002) (stating § 3663(b)(5) allowed victim to assign restitution). There is no

(Doc. 10 at 2). The United States concedes, however, that the Ninth Circuit seems "to have assumed . . . that a victim may assign restitution to another entity." (Doc. 10 at 2) (citing *United States v. Hankins*, 858 F.3d 1273, 1277 (9th Cir. 2017) ("Neither the victim, nor the victim's assignee, has the authority to settle, release, satisfy, or otherwise modify a restitution judgment.")). SRP responds that multiple courts have allowed assignments of restitution and argues there is no reason to believe restitution should not be assignable. Because the United States does not squarely oppose allowing victims to assign restitution to third parties, the Court will assume such assignments are permissible.

## II. Form Assignments Must Take

Having concluded victims can assign restitution to third parties, the next issue is the form such an assignment must take. The United States argues an assignment would only be effective if it "specifically state[s] that *payments* under the judgment were being assigned." (Doc. 10 at 2). SRP believes no such specific statement is required. In SRP's view, "the transfer of the underlying obligation giving rise to the restitution obligation . . . carries with it the right to receive the restitution payments." (Doc. 10 at 4). In other words, "the restitution obligation and obligation under the underlying promissory note are inseparably connected so that the transfer of the note carries with it the right to restitution payments." (Doc. 10 at 6).

When deciding what form an assignment must take, the first difficulty is identifying which law should apply to this issue. The parties have not addressed the choice of law issue but given that the restitution stems from a federal judgment in a federal criminal prosecution, it seems likely federal law would govern. State law, however, is often implicated in proceedings involving restitution. *See, e.g.*, 18 U.S.C. § 3613(a) (allowing for collection of restitution based on "practices and procedures for the enforcement of a civil judgment under Federal law or State law"); *Paul Revere Ins. Grp. v. United States*, 500 F.3d 957, 961 (9th Cir. 2007) ("Section 3613(a) thus allows for enforcement of a restitution judgment by state or federal enforcement procedures . . . ."). And even if federal

comparable provision in 18 U.S.C. § 3663A.

law were to apply, courts often look to state law to determine the proper contours of federal law. *See United States Postal Serv. v. Ester*, 836 F.3d 1189, 1195 (9th Cir. 2016) (noting "federal common law" often is informed by state law). If federal law applies, but the Court should look to state law, there is additional uncertainty whether the relevant state would be Idaho where the restitution was ordered or Arizona where the case was transferred and restitution is being handled. Fortunately, it appears the general principles governing assignments are the same regardless of which law applies. *See Restatement (Second) of Contracts* § 324 (1981) (explaining what is required for effective assignment and citing federal and state caselaw). Therefore, the Court will analyze assignments under those general principles, with special attention paid to Arizona law.

"It is . . . hornbook law that in order to effect a legal assignment of any kind there must be evidence of an intent to assign or transfer the whole or part of some specific thing, debt, or chose in action, and the subject matter of the assignment must be described sufficiently to make it capable of being readily identified."[4] *Certified Collectors, Inc. v. Lesnick*, 570 P.2d 769, 771 (Ariz. 1977). That evidence need not take the form of a written document. *See Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229, 1235 (Ariz. Ct. App. 2002) (concluding document did not reflect assignment and looking to "affidavits, deposition testimony, or other evidence"). But the evidence must be clear enough such that a court can determine the precise terms of the assignment. *Cf. Certified Collectors*, 570 P.2d at 603 (concluding a document "entitled 'Assignment'" was not a valid assignment because it did not contain "[t]he crucial information necessary" to identify the terms of the assignment). Clarity is needed because even an undisputed assignment of some interests will not automatically assign all interests held by an assignor. *See, e.g., Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282,

---

[4] Other jurisdictions agree identifying the "intent" behind the assignment is the crucial inquiry. *Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 90 P.3d 346, 351 (Idaho 2004) ("In order to determine the intent of the assignment, the Court looks to the contract between the assignor and assignee."); *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.A.R.L.*, 790 F.3d 411, 418 (2d Cir. 2015) ("To assign a claim effectively, the claim's owner must manifest an intention to make the assignee the owner of the claim.").

1292 (9th Cir. 2014) (concluding assignment of "all rights and benefits" was not effective to assign claim for breach of fiduciary duty).

The burden of proving the existence of an assignment and its terms is on the assignee. *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993) (noting "general contract principles dictate that to prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts"). Here, that means the burden is on SRP to prove GMAC did, in fact, intend to assign its entitlement to restitution to Summit and that Summit later intended to assign that entitlement to SRP. At present, SRP has not carried its burden.

To begin, it appears GMAC entered bankruptcy in May 2012 but it transferred the underlying promissory note to Summit in September 2012.[5] Neither SRP nor the United States has explained whether the transaction was, in fact, conducted during GMAC's bankruptcy and, if it was, whether that transfer was legal in view of the pending bankruptcy proceeding. Assuming for the moment GMAC's bankruptcy did not prevent the September 2012 transaction, SRP still has not carried its burden.

SRP's main argument allegedly establishing assignment of the restitution is that the assignment of the underlying promissory note automatically transferred the entitlement to restitution. SRP does not cite any authority for this proposition and it appears inaccurate given how criminal restitution is viewed. An order requiring payment of criminal restitution is a distinct part of a criminal sentence that is imposed "as a means of achieving penal objectives such as deterrence, rehabilitation, or retribution." *United States v. Edwards*, 595 F.3d 1004, 1014 (9th Cir. 2010). As such, criminal restitution cannot be dictated by the terms of an underlying agreement between the defendant and the victim. For example, the Ninth Circuit has held restitution "cannot be waived by a . . . civil settlement" between the defendant and the victim before restitution is ordered. *Id.* Similarly, a defendant and a victim cannot "settle" a restitution obligation after it is

---

[5] The parties have not provided any information regarding that bankruptcy other than noting "ResCap Liquidating Trust . . . was assigned certain assets" during those proceedings.

- 7 -

imposed. *United States v. Hankins*, 858 F.3d 1273, 1277 (9th Cir. 2017). An order requiring payment of restitution must be viewed as a distinct obligation not necessarily tied to an underlying agreement between the victim and defendant. Therefore, there is no reason to believe GMAC's transfer of the underlying promissory note *automatically* transferred the restitution as well. The criminal restitution and promissory note are, simply, two entirely separate obligations.

In light of the restitution obligation not being automatically transferred together with the promissory note, the burden is on SRP to point to other evidence establishing GMAC intended to assign the restitution to Summit. The best evidence of such an intent likely would be the terms of the transaction between GMAC and Summit. SRP, however, has not provided those terms. Instead, SRP points to GMAC's behavior after transferring the promissory note to Summit as that transfer was meant to transfer the restitution as well. It is true that GMAC endorsed two checks in 2012 and two checks in 2013 to the entity handling the loan servicing for Summit. But GMAC accepted, and did not endorse to another entity, three subsequent checks from later in 2013. Given this evidence, it is not clear GMAC intended to assign restitution to Summit. In fact, this evidence makes it impossible to know what GMAC had in mind. GMAC's handling of the checks, standing alone, does not establish an assignment.

With no evidence of an assignment by GMAC to Summit, there is no need to determine whether Summit then validly assigned the restitution to SRP. But assuming SRP were able to come forward with sufficient evidence of an assignment by GMAC to Summit, SRP would also need to point to evidence establishing an assignment from Summit to SRP. There is no evidence of this second assignment. SRP has not provided the terms of this transaction and there is not even a history of endorsed checks that might lend some support to this alleged assignment. Thus, even if the Court were to conclude there had been an assignment from GMAC to Summit, the present record would not support concluding there had been an assignment from Summit to SRP.

### III. Additional Proceedings

Accepting that GMAC might have assigned the restitution to a third party, SRP has not carried its burden of establishing such an assignment occurred. SRP may, however, be able to gather additional information to support its position. For example, SRP may be able to obtain information regarding the terms of the transaction between GMAC and Summit. At the very least, SRP should have access to the terms of the transaction when it purchased the underlying loan from Summit. Accordingly, SRP will be given time to gather this information and renew its motion.

While SRP is attempting to gather additional information, the United States will be required to contact the appropriate individuals or entities involved in the GMAC bankruptcy. As mentioned earlier as critical, it is unclear whether the transfer of the promissory note from GMAC to Summit occurred as a part of, and in accordance with, GMAC's bankruptcy. If it did, that transfer may be void. But even if the transfer of the promissory note was permissible, it is possible that if GMAC did not assign its entitlement to restitution to Summit. In that scenario, the restitution would still belong to GMAC such that it should be disbursed through the bankruptcy proceedings. The United States is to make efforts to determine whether the individuals and entities involved in GMAC's bankruptcy have a position regarding the restitution.

Finally, if SRP is unable to locate sufficient evidence of the alleged assignments, and GMAC does not come forward to claim the restitution, the Court likely will assign the restitution to the Crime Victims Fund. As noted by the Ninth Circuit, when restitution is paid but no victim is available to accept restitution, the funds will "revert at some point to the U.S. Treasury's federal unclaimed property fund and eventually may even escheat to the state." *United States v. Hankins*, 858 F.3d 1273, 1279-80 (9th Cir. 2017). "Surely Congress did not intend [that] result." *Id.* In such circumstances, the Ninth Circuit approved sending the unclaimed restitution to the Crime Victims Fund. That result would be "consistent with the purposes of the [Mandatory Victims Restitution Act]" and would "foster[] the compensatory and punitive goals of [that] statute." *Id.* at 1281.

Accordingly,

**IT IS ORDERED** the United States shall contact the entities or individuals involved in GMAC's bankruptcy and determine whether GMAC wishes to claim an interest in the restitution payments. No later than **May 1, 2020**, the United States shall file a status report explaining its efforts and GMAC's position.

**IT IS FURTHER ORDERED** no later than **May 15, 2020**, SRP shall file a motion seeking payment of the restitution. Such motion must be accompanied by evidence establishing the validity of the assignments.

**IT IS FURTHER ORDERED** the Motion to Produce (Doc. 9) is **DENIED**.

Dated this 20th day of December, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge